UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>STEVEN HAMERSLAG; and PERSPECTIUM CORP.,<br><br>　　　　　　　　　　Defendants. | Case No.: 23-CV-780 JLS (AHG)<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT; AND (2) DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>(ECF Nos. 17, 21) |

　　　　Presently before the Court is Plaintiff Scottsdale Insurance Company's Motion for Default Judgment ("Pl.'s Mot.," ECF No. 17). Defendant Steven Hamerslag ("Hamerslag" or "Defendant") did not respond to Plaintiff's Motion, which the Court took under submission on February 29, 2024. ECF No. 20. Two months later, Defendant filed a Motion to Set Aside Entry of Default ("Def.'s Mot.," ECF No. 21); Plaintiff submitted an Opposition ("Opp'n," ECF No. 22); and Defendant filed a Reply thereto ("Reply," ECF No. 23). The Court then took Defendant's Motion under submission on May 31, 2024. ECF No. 24. Having carefully considered the Parties' arguments and the law, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

# BACKGROUND

The Court incorporates by reference the background section of its November 8, 2023 Order ("Order," ECF No. 15) and states below only those additional facts relevant to the instant Motions.

In the Order, the Court granted Defendant Perspectium Corporation's ("Perspectium") Motion to Set Aside Entry of Default (ECF No. 7). Order at 8. Noting that Plaintiff had wholly failed to oppose Perspectium's Motion, the Court concluded that the *Ghazali* factors weighed in favor of summarily granting Perspectium's Motion, vacated the Clerk's Entry of Default as to Perspectium, quashed Plaintiff's attempted service on Perspectium, and ordered Plaintiff to serve Perspectium within thirty days. *Id.*

On December 18, 2023, having heard nothing from Plaintiff, the Court issued an Order to Show Cause ("OSC," ECF No. 16). In it, the Court directed Plaintiff to explain why it should not dismiss Perspectium from this action due to Plaintiff's failure to effectuate service. OSC at 1–2. Plaintiff did not offer a timely response regarding Perspectium, so the Court dismissed Perspectium from this action on January 23, 2024. ECF No. 18.

Separately, the OSC noted the Clerk had entered default against Hamerslag on August 9, 2023, *see* ECF No. 14, but Plaintiff had not moved for default judgment within the time set by Civil Local Rule 55.1. OSC at 1–2. Consequently, the Court also ordered Plaintiff to explain why the Court should not dismiss the entire action. *Id.*

Two days before the deadline set by the OSC was set to expire, Plaintiff filed its Motion. In it, Plaintiff offered no explanation for its delay in moving for default judgment against Hamerslag. *See generally* Mem. P. & A. Supp. Pl.'s Mot. ("Pl.'s Mem."), ECF No. 17-1. More frustrating still, Plaintiff barely addressed the applicable *Eitel* factors, running through all seven factors in just over one page. *Id.* at 6–7.

Hamerslag filed his Motion on April 30, 2024. In it, Hamerslag acknowledges he initially informed Plaintiff that he would not be defending himself in the instant action. *See* Def.'s Mot. at 12; Decl. Jason Donovan Supp. Def's Mot. ("Donovan Decl.") ¶¶ 2–5,

ECF No. 21-2; Pl.'s Mot. Ex. B., ECF No. 17-5. Hamerslag nevertheless argues that the Clerk's Entry of Default should be set aside because proceeding with this lawsuit will cause Plaintiff no prejudice; he has a meritorious defense; and his actions, though "perhaps misguided," were not in bad faith. *See* Def.'s Mot at 6, 12.

**REQUEST FOR JUDICIAL NOTICE**

Plaintiff asks the Court to take judicial notice of (1) the Complaint ("Compl.," ECF No. 1) in this action; (2) a copy of the insurance policy ("Policy," ECF No. 1-2)[1] issued by Plaintiff to Hamerslag and Perspectium; and (3) the complaint ("Loo Compl.," ECF No. 1-3) associated with the third-party lawsuit for which Hamerslag seeks coverage. Pl.'s Req. Judicial Notice Supp. Pl.'s Opp'n ("Req.") at 3, ECF No. 22-1. The latter two documents were initially filed as exhibits to the Complaint. *Id.* Defendant opposes the Request in its entirety. *See* Def.'s Obj. Req. at 1–3, ECF No. 23-1.

The Court will consider the three at-issue documents. To resolve Defendant's Motion, the Court must consider, among other factors, whether Defendant has advanced a meritorious defense to Plaintiff's claims. *See Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). The Court cannot make this determination without considering the allegations in the Complaint. Moreover, because documents attached to a complaint are incorporated by reference into said complaint, *see Hsu v. Puma Biotech., Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016), the Court should consider such documents when assessing the scope of Plaintiff's claims. As both the Policy and the Loo Complaint are exhibits to the Complaint, the Court may consider both documents without taking judicial notice of their existence. The Court thus **DENIES** Plaintiff's Request as **MOOT**.

Though the Court will consider these documents, the Court emphasizes that it will not accept the facts asserted within them as true. Instead, when weighing a motion to set

---

[1] All citations to the Policy refer to the blue page numbers affixed to the top right corner of each page in CM/ECF.

aside an entry of default, courts assume *the defendant's* allegations to be true and then considers whether those allegations would constitute a defense. *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015).

## MOTION TO SET ASIDE DEFAULT

### I.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." Courts have broad discretion in deciding whether to vacate an entry of default. *See Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) (per curiam). It is the defendant's burden to establish that good cause to vacate the entry of default exists. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

"[T]he 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II*, 375 F.3d at 925. Thus, in assessing good cause, a district court considers three factors:

> (1) whether [the defendant] engaged in culpable conduct that led to the default; (2) whether [the defendant] had a meritorious defense; or (3) whether reopening the default judgment would prejudice [the plaintiff]. As these factors are disjunctive, the district court [is] free to deny the motion "if any of the three factors [are] true.

*Id.* at 926 (citations omitted) (quoting *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1008 (9th Cir. 2000)).

Courts "should apply the[se] factors more liberally" when assessing a motion to set aside an entry of default rather than a default judgment. *Page v. Banks*, No. 07CV2254JM(BLM), 2008 WL 2037763, at *2 (S.D. Cal. May 12, 2008) (citing *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986)). Ultimately, there is a strong preference for deciding cases on their merits, and therefore any doubts should be resolved in favor of setting aside the default. *Direct Mail Specialists, Inc. v. Eclat*

*Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).

## II. Analysis

### A. *Prejudice*

The record does not suggest Plaintiff will be prejudiced if the Clerk's entry of default is set aside. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [the plaintiff's] ability to pursue his claim will be hindered.'" *TCI Grp.*, 244 F.3d at 701 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). Here, Plaintiff concedes the absence of prejudice. *See* Opp'n at 10. The prejudice factor therefore weighs in favor of setting aside the default.

### B. *Meritorious Defense*

Defendant's burden to prove a meritorious defense is "minimal." *Aguilar*, 782 F.3d at 1108 (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010)). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. If "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default," this factor weighs in the defendant's favor. *See Stone*, 794 F.2d at 513.[2]

Plaintiff contends that coverage for the underlying lawsuit is barred by the Policy's Insured v. Insured Exclusion, which states in relevant part: "Insurer shall not be liable for Loss under this Coverage Section on account of any Claim: . . . . brought or maintained by,

---

[2] Where, as here, an insurance company seeks a declaratory judgment stating it has no duty to defend against a third-party lawsuit, a defendant's burden on default judgment is arguably more minimal still. This is true because a defendant in such a suit, to prevail on the merits, need only show that "any facts stated or fairly inferable in the [third-party complaint], or otherwise known or discovered by the insurer, suggest a claim [is] *potentially* covered by the policy." *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005). Indeed, "[a]n insurer must defend against a suit even 'where the evidence suggests, but does not conclusively establish, that the loss is not covered.'" *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 326 P.3d 253, 258 (Cal. 2014) (quoting *Montrose Chem. Corp. v. Super. Ct.*, 861 P.2d 1153, 1160 (Cal. 1993)).

on behalf of, in the right of, or at the direction of any Insured in any capacity . . . ." Policy at 26 ("Insured v. Insured Exclusion"). Defendant counters that Perspectium purchased an endorsement to the Policy that amends the Insured v. Insured Exclusion. *See* Policy at 42 (the "Dilution Claims Exception"). This endorsement excepts from the Insured v. Insured Exclusion (and therefore provides for coverage over) any claim:

> brought or maintained by any former Director or Officer of [Perspectium] solely in their capacity as a securities holder of [Perspectium] and where such Claim is solely based upon and arising out of . . . any actual or alleged unfair dilution of such securities holder's securities interest, but only if such Claim is first made within two (2) years after the date such Director or Officer ceased to be a Director or Officer of [Perspectium] and such Claim is made in connection with the sale of a majority of the assets of [Perspectium], the merger of [Perspectium] with or into another entity, or the initial public offering of the securities of [Perspectium] . . . .

Dilution Claims Exception.

    Defendant has advanced a potentially meritorious defense. Though the Policy does not define "unfair dilution," caselaw suggests that unfair dilution occurs when a shareholder in a merging company swaps their shares in the old company for shares in the newly created entity at a less favorable exchange rate than they would have received in the absence of wrongdoing.[3] Here, the Loo Complaint alleges that "[b]ecause the Stock Conversion Price [associated with the merger of Perspectium with another entity] was grossly inflated, [former directors of and securities holders in Perspectium] received far

---

[3] *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1332 (7th Cir. 1969) ("The short answer is that if the allegations of the complaint are proved, the Peoria shareholders were entitled to a more favorable exchange ratio than they were granted and may have had their equity position *unfairly diluted*." (emphasis added)); *Copley Fund, Inc. v. SEC*, 796 F.3d 131, 134 (D.C. Cir. 2015) (explaining that providing an exemption to an SEC rule would have resulted in a "diluted net asset value" by allowing one group of shareholders to recoup nearly $14 per share, while another group would recoup less than $12 per share); *cf.* Jeffrey L. Kwall & Katherine K. Wilbur, *The Outer Limits of Realization:* Weis v. Stearn *and Corporate Dilution*, 17 Fl. Tax Rev. 47, 48 (2015) (describing an instance wherein shareholders in an old corporation surrendered all of their stock in the old corporation in exchange for fifty percent of the stock in the new corporation (and cash) as "a classic case of corporate dilution").

fewer shares of [the acquiring company's] stock than they would have received at fair market value." Loo Compl. ¶ 18. As this allegation mirrors the situation deemed unfair dilution in *Swanson*, the Dilution Claims Exception may grant coverage over the Loo lawsuit despite the Insured v. Insured Exclusion.[4]

Plaintiff's counterarguments are unavailing. Plaintiff first contends that because "Perspectium was acquired through a merger of 'Merger Sub with and into [Perspectium],'" "the merger was not of [Perspectium] 'with or into another entity.'" Opp'n at 10. In making this argument, Plaintiff ignores that the Dilution Claim Exception uses the phrase "with *or* into." Dilution Claims Exception (emphasis added). Regardless of which company merged into which, it is clear from the allegations in the Loo Complaint that Perspectium merged *with* another company. *See* Loo Compl. ¶ 52. Thus, Plaintiff's first counterargument fails to demonstrate that Defendant's dilution defense is meritless.

Second, Plaintiff relies on the Dilution Claims Exception's repeated use of the word "solely," arguing because the Loo plaintiffs "also assert claims in their capacities as securities holders of [the acquiring company] and for alleged wrongdoing that occurred after [the acquiring company] acquired Perspectium," the Dilution Claims Exception does not apply. Opp'n at 9–10.

As Defendant points out, however, this characterization of the Loo Complaint is up for debate. For instance, though the Loo Complaint mentions that one of the Loo plaintiffs was ultimately fired from a position at the acquiring company, *see* Loo Compl. ¶¶ 75–77, the Loo Complaint's causes of action do not explicitly reference this firing, s*ee id.* ¶¶ 79–113. Moreover, because the Loo plaintiffs only hold securities in the acquiring company because of alleged unfair dilution of their Perspectium shares, it is arguable that the Loo plaintiffs are *not* bringing claims in their capacity as acquiring company shareholders, but instead solely as wronged Perspectium shareholders. Though Plaintiff's "solely" argument may well ultimately prevail, Defendant's asserted defense is sufficiently meritorious at this

---

[4] The Court need not and does not reach the other potential defenses advanced by Defendant.

stage such that this factor weighs in favor of setting aside the Clerk's Entry of Default.[5]

### C. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp.*, 244 F.3d at 697 (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)).

Two interpretations of this "culpability" requirement exist in the caselaw. Some Ninth Circuit cases read the above articulation strictly. *See, e.g.*, *Franchise Holding II*, 375 F.3d at 926. Others, however, hold that a "[n]eglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under [the Ninth Circuit's] default cases." *TCI Grp.*, 244 F.3d at 697. This latter line of cases suggests that to be considered culpable, "the movant must have acted with bad faith." *Mesle*, 615 F.3d at 1092.

Though courts typically apply the more lenient "bad faith" approach to legally unsophisticated parties, a court may still consider a legally sophisticated movant's intent. *See id.* at 1093; *HTP, Inc. v. First Merit Grp. Holdings, Inc.*, No. 22-35184, 2022 WL 17958638, at *2 (9th Cir. Dec. 27, 2022). Indeed, both the Ninth Circuit and this Court have applied the latter standard to represented parties. *See Veracity Wireless, Inc. v. Virtual Fleet Mgmt., LLC*, No. 17-CV-295 JLS (BLM), 2019 WL 4266550, at *5–6 (S.D. Cal. Feb. 26, 2019) (citing *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000)).

In the Court's view, both Parties have demonstrated a marked lack of diligence in their approach to this litigation. Plaintiff has repeatedly failed to comply with this District's

---

[5] The Court also notes that liability insurers are generally "obligated to defend against all of the claims involved in the [third-party] action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795–96 (Cal. 1993) (en banc); *see also Buss v. Super. Ct.*, 939 P.2d 766, 775 (Cal. 1997) ("[I]n a 'mixed' action, the insurer has a duty to defend the action in its entirety."). Though it is possible that the Policy's specific language negates this doctrine, said doctrine nevertheless weighs in favor of concluding that Defendant's Dilution Claims Exception defense qualifies as "meritorious" for purposes of a motion to set aside entry of default.

local rules, provided unsatisfactory responses to the Court's orders, and put off seeking default judgment against Defendant for approximately four months. Defendant's lethargy is more egregious still: Defendant's counsel affirmatively indicated that Defendant had no intent to defend this action on July 5, 2023. Then, Defendant failed to move to set aside entry of default until April 30, 2024—three and a half months after Plaintiff filed their Motion. To say the least, both Parties have greatly tested this Court's patience.

The Court, however, sees no indication that Defendant failed to respond to "gain an advantage or to delay the inevitable." *See RingCentral, Inc. v. Quimby*, 781 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011). Instead, it appears Defendant failed to respond because (1) he assumed Perspectium would adequately represent his interests in this case and (2) he felt this case was likely to settle as part of out-of-court conversations involving "multiple insurers." *See* Def.'s Mot. at 12. Though Defendant's approach was markedly ill-advised, at least one court considering similar circumstances found that "the record [did] not reflect culpable conduct by [the d]efendant." *Kiwijet, LLC v. Guangzhou Hayonex Int'l Logistics Co.*, No. 2:21-CV-07515-FWS-JDE, 2024 WL 1134968, at *2 (C.D. Cal. Jan. 23, 2024) (noting the defendant failed to respond because it believed its dismissed co-defendant had a duty to defend and indemnify it). As Defendant's failure to respond does not appear to have been motivated by bad faith, the Court does not find Defendant sufficiently culpable to justify declining to set aside the Clerk's Entry of Default.

Moreover, to the extent Defendant *is* culpable, the Court still has discretion to set aside the Clerk's Entry of Default. *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111–12 (9th Cir. 2011). As resolving cases based on their merits is strongly favored, Plaintiff has conceded it will suffer no prejudice, and Defendant has advanced a meritorious defense, the Court concludes the first two factors outweigh any potential culpability such that setting aside the Clerk's Entry of Default is appropriate.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Set Aside Entry of Default (ECF No. 21) and **DENIES** Plaintiff's Motion for Default Judgment (ECF

No. 17). The Court therefore **VACATES** the Clerk's Entry of Default as to Hamerslag (ECF No. 14). The Court also deems Defendant's Proposed Answer (ECF No. 21-1) filed as of the date of this Order.

The Court wishes to make a final point abundantly clear. The Court expects both Parties to approach this litigation with the utmost diligence moving forward. The Parties should not expect any further leeway with respect to deadlines set by the Court.

**IT IS SO ORDERED.**

Dated: June 27, 2024

Hon. Janis L. Sammartino
United States District Judge