UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>v.<br><br>STEVEN HAMERSLAG and PERSPECTIUM CORP.,<br><br>                              Defendants. | Case No.: 23-CV-780 JLS (AHG)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 40, 45) |

Presently before the Court are Plaintiff Scottsdale Insurance Company's ("Scottsdale") Motion for Judgment on the Pleadings ("MJP," ECF No. 40) and Memorandum of Points and Authorities in Support thereof ("MJP Mem.," ECF No. 41-1), to which Defendant Steven Hamerslag filed an Opposition ("MJP Opp'n," ECF No. 49) and Plaintiff filed a Reply ("MJP Reply," ECF No. 53). Also before the Court are Hamerslag's Motion for Summary Judgment ("MSJ," ECF No. 45) and Memorandum of Points and Authorities in Support thereof ("MSJ Mem.," ECF No. 45-1), to which Scottsdale filed an Opposition ("MSJ Opp'n," ECF No. 50) and Hamerslag filed a Reply ("MSJ Reply," ECF No. 51).

The Court heard oral argument on June 17, 2025.  ECF No. 56.  Having carefully considered the Parties' arguments, the applicable law, and the evidence, the Court **DENIES** Scottsdale's Motion for Judgment on the Pleadings and **GRANTS** Hamerslag's Motion for Summary Judgment as follows.

## BACKGROUND

This case arises out of an insurance dispute related to an underlying lawsuit to which Scottsdale insists it owes no duty to defend or indemnify.  Hamerslag, the Defendant in the instant case as well as one of the defendants in the underlying lawsuit, takes the opposing view.  Scottsdale brought this action seeking a declaratory judgment stating that it has no duty to defend or indemnify Hamerslag in connection with the underlying suit.  Initially alongside Hamerslag as a named Defendant was Perspectium Corp. ("Perspectium"), which was previously dismissed from this action but whose presence continues to loom large.  *See* ECF No. 18 (Order dismissing Perspectium from this case).

## I.   Formation of Perspectium

Perspectium, founded in 2013 by David Loo, is a data analytics company.  ECF No. 1-3 ("Loo Compl.") ¶ 1.  Upon his founding of Perspectium, Mr. Loo served as the company's Chief Executive Officer ("CEO") and as a Director.  ECF No. 1 ("Compl.") ¶ 23.  Joining Mr. Loo as a Director was Mr. Hamerslag, whose venture capital firm—TVC Capital, LLC ("TVC")—invested $16 million in Perspectium.  *Id.* ¶ 24.  Thus, at the time of the events that prompted the underlying lawsuit, it is undisputed that Mr. Loo and Mr. Hamerslag were both Directors of Perspectium.

## II.   Scottsdale Insurance Policy

Scottsdale, an insurance company, issued to Perspectium an insurance policy—styled "Business and Management Indemnity Policy"—under Policy No. EKS3334543.  ECF No. 1-2 ("Policy") at 2.[1]  The Policy was issued from June 15, 2020, through June 15,

---

[1] All pin citations to the Policy refer to the CM/ECF page numbers electronically stamped at the top of each page.

2021, though Perspectium elected to convert the Policy to run-off coverage from June 1, 2021, through June 1, 2024. *See* Policy at 89. To fully understand the factual and legal questions disputed by the Parties, it is first essential to step through the relevant provisions of the Policy.

At the Policy's nucleus is the Directors and Officers and Company Coverage Section ("D&O Coverage Section"), which provides in Section A.1. the following:

> The Insurer shall pay the Loss of the Directors and Officers for which the Directors and Officers are not indemnified by the Company and which the Directors and Officers have become legally obligated to pay by reason of a Claim first made against the Directors and Officers during the Policy Period or, if selected, the Extended Period, and reported to the Insurer pursuant to Section E.1. herein, for any Wrongful Act taking place prior to the end of the Policy Period.

Policy at 24 (bold omitted).

In concise terms, the D&O Coverage Section provided Perspectium Directors and Officers with coverage for legal fees and liability resulting from alleged wrongful conduct performed while acting in their official capacity. *See* Policy at 24–26. Such alleged wrongful conduct would be covered by the Policy so long as the conduct was alleged in a "Claim," which includes "a civil proceeding against any Insured seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." *Id.* at 24 (bold omitted).

Critically, the D&O Coverage Section includes various exclusions, the most important one for present purposes being the so-called "Insured vs. Insured Exclusion," found in Section C.1.e. *Id.* at 27. That Exclusion provides:

> Insurer shall not be liable for Loss under this Coverage Section on account of any Claim brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity, any Outside Entity or any person or entity that is an owner of or joint venture participant in any Subsidiary in any respect and whether or not collusive . . . .

Policy at 26–27 (bold omitted). In turn, "Insured" is defined by the Policy to include Directors and Officers of Perspectium, as well as, *inter alia*, the spouses of Directors and Officers. *Id.* at 13, 25. This Exclusion, generally speaking, removes from coverage intra-Director or intra-Officer disputes where a Director or Officer sues another Director or Officer.

To make matters more complicated, carved out of the Insured vs. Insured Exclusion is an exception: the Dilution Claims Exception. This Exception, located in Section C.1.e.iv., restores coverage for a claim that might otherwise be excluded under the Insured vs. Insured Exclusion if the claim:

> is brought or maintained by any former Director or Officer of the Company solely in their capacity as a securities holder of the Company and where such Claim is solely based upon and arising out of any actual or alleged unfair dilution of such securities holder's securities interest, but only if such Claim is first made within two (2) years after the date such Director or Officer ceased to be a Director or Officer of the Company and such Claim is made in connection with the sale of a majority of the assets of the Company, the merger of the Company with or into another entity, or the initial public offering of the securities of the Company.

Policy at 42 (bold omitted). Both the Insured vs. Insured Exclusion and the Dilution Claims Exception were implicated when Mr. Hamerslag was sued because of actions he allegedly took in his capacity as an investor in and Director of Perspectium.

## III. Underlying Lawsuit

On April 4, 2022, David Loo, Sarah Loo, and the Loo Family Trust (collectively, "Loo Plaintiffs") filed suit against Mr. Hamerslag and Andersen Tax LLC ("Andersen"). *See generally* Loo Compl. Recall that David Loo founded Perspectium in 2013, serving as its CEO and as a Director. *Id.* ¶ 32. The general thrust of the lawsuit is that Mr. Hamerslag, having invested in and become a Director of Perspectium, exploited his position in the company to his own personal benefit at the detriment of Mr. Loo, his wife Sarah Loo, and the Loo Family Trust, an entity that is only once obliquely mentioned in

the Loo Complaint as "a California trust."[2]  *Id.* ¶ 25.

The allegations in the Loo Complaint are extensive and must be recounted in depth so as to appreciate the essence of the instant dispute.  As alluded to above, Mr. Hamerslag's venture capital firm TVC invested $16 million in Perspectium, thereby earning Mr. Hamerslag a position as a Director of Perspectium as early as 2017.  *Id.* ¶¶ 2, 34.  TVC, meanwhile, had also invested in BitTitan, Inc. ("BitTitan"), a company that provided data migration and conversion services.  *Id.* ¶ 3.  Like Perspectium, BitTitan gave Mr. Hamerslag a Director position following the investment.  *Id.*

Around October 2020, Mr. Hamerslag suggested to Mr. Loo that Perspectium and BitTitan would benefit from a merger because they "provided complementary services and targeted different customer segments."  *Id.* ¶ 38.  Merger negotiations sprouted out of that suggestion, resulting in an agreed-upon arrangement whereby BitTitan would purchase all of the equity in Perspectium and, in return, the Loo Plaintiffs would receive BitTitan securities.  *Id.* ¶¶ 14–19.  Such an arrangement meant that Mr. Loo's personal stake in the merger was bound up with the securities interest in BitTitan that he would be entitled to.  Although Mr. Loo initially sought an eight-percent ownership interest in BitTitan, Mr. Hamerslag allegedly convinced him to take a five-percent interest with the remaining three-percent subject to a vesting schedule.  *Id.* ¶ 47.  A vesting schedule, Mr. Loo was allegedly led to believe, would incentivize all parties involved "to grow the combined company and its value."  *Id.* ¶ 13.

All the while, the Loo Complaint alleges that Mr. Hamerslag and BitTitan had ulterior motives.  Namely, Mr. Hamerslag and BitTitan were allegedly skeptical of BitTitan's true growth potential after the COVID-19 pandemic, so they were looking to "cash out quickly" by providing short-term liquidity to BitTitan's equityholders.  *Id.* ¶ 42.  This strategic outlook, according to the Loo Plaintiffs, put pressure on BitTitan to rapidly

---

[2] This allegation was apparently revised in the underlying amended complaint, which labels the Loo Family Trust as a Texas trust rather than a California trust.  *See* RJN at 10.

pursue a post-merger sale, "focus[ing] on offers that would include all cash at closing and a rapid closing period." *Id.* ¶ 68. Such a swift all-cash sale immediately following the Perspectium-BitTitan merger was intrinsically antithetical to Mr. Loo's interests because it "would afford no opportunity to grow the combined company and its value, nor the opportunity to convert the option into equity or options in the acquiring company." *Id.* ¶ 13. In other words, a swift post-merger all-cash sale ran counter to the reasoning behind Mr. Loo's acquiescence in taking a five-percent interest in BitTitan with a vesting schedule for the remaining three-percent interest. *Id.* The Loo Plaintiffs alleged that, had Mr. Loo known about these intentions, he "would not have accepted options and instead would have insisted on cash or BitTitan shares, or would not have pursued the merger." *Id.*

The Loo Plaintiffs also alleged that, to achieve a tax-free merger, Mr. Hamerslag and BitTitan engaged Andersen, a tax firm, to obtain an artificially inflated valuation of BitTitan. *Id.* ¶ 16. An artificially inflated valuation played to the disadvantage of Mr. Loo because Perspectium shareholders, including Mr. Loo, would receive fewer BitTitan shares in the merger. *Id.* ¶ 11. The artificially inflated valuation would also deprive Mr. Loo of the opportunity to exercise his options at a profit upon a follow-on sale. *Id.* ¶ 66.

As the Loo Plaintiffs allege Mr. Hamerslag had intended all along, a sale followed right on the heels of the Perspectium-BitTitan merger. Soon after the merger closed, BitTitan solicited offers for an all-cash sale and allegedly received several offers. *Id.* ¶ 72. According to the Loo Plaintiffs, despite "receiv[ing] other offers that would have been more favorable to the former Perspectium shareholders," BitTitan agreed to be acquired by Idera, Inc. ("Idera") at a substantially lower price than BitTitan had previously been valued at. *Id.* ¶ 17. The net result of the Idera transaction, according to the Loo Plaintiffs, was that Mr. Loo had lost out on much of the value in Perspectium that he had created, while Mr. Hamerslag and TVC came out in the black. *Id.* ¶ 73. Following the Idera transaction, Mr. Loo's employment was terminated as part of a mass lay-off. *Id.* ¶ 77.

The Loo Plaintiffs, in April 2022, brought claims against Mr. Hamerslag in Washington state court for: (1) breach of fiduciary duty, (2) aiding and abetting,

(3) negligent misrepresentation, (4) interference with contractual relations, and (5) interference with prospective economic advantage. *See generally* Loo Compl. In the same suit, they also brought largely overlapping claims against Andersen for its complicity in the scheme. *See id.* This underlying suit has reportedly been resolved, following an unsuccessful attempt to remove the case from state to federal court. *See* MJP Mem. at 6; *see also Loo v. Hamerslag*, No. 2:22-cv-00493-TSZ (W.D. Wash. Aug. 24, 2022), Dkt. No. 32.

## IV.    Procedural History

Resolution of the underlying lawsuit was just the beginning of this one. Hamerslag sought insurance coverage under the Policy from Scottsdale, but on June 13, 2022, Scottsdale's coverage counsel denied coverage. ECF No. 1-4 ("Coverage Denial") at 5–6.[3] Citing the Insured vs. Insured Exclusion, coverage counsel determined that the underlying suit was "brought by, on behalf of, in the right of, and at the direction of Insureds as defined in the Policy," so coverage was unavailable. *Id.* at 6. Coverage counsel also expressly determined that the Dilution Claims Exception did not apply. *Id.* Hamerslag continued to seek coverage after the denial, prompting Scottsdale to file the instant lawsuit seeking a declaratory judgment that the Insured vs. Insured Exclusion bars coverage under the Policy. Compl. ¶¶ 32–33.

Scottsdale initially filed suit against both Hamerslag and Perspectium, but Perspectium was dismissed as a Defendant after Scottsdale failed to prosecute its case. *See* ECF No. 18. That left just Hamerslag remaining as a Defendant, but he had defaulted after failing to respond to the Complaint. *See* ECF No. 14. Scottsdale moved for default judgment against Hamerslag, but Hamerslag then noticed an appearance and moved to set aside his default, claiming his initial lack of resistance to the lawsuit was based on an intention to pursue early resolution that would "avoid injecting a case into the court's active

---

[3] All pin citations to the Coverage Denial refer to the CM/ECF page numbers electronically stamped at the top of each page.

docket . . . ." ECF No. 21 at 12. The Court granted Hamerslag's request, and in the process, recognized the possibility that Hamerslag may possess a meritorious defense based on the Dilution Claims Exception in the Policy. *See* ECF No. 25 at 5–8. Mr. Hamerslag filed an Answer, ECF No. 26, the case moved through discovery, and the two potentially case dispositive Motions are now pending before the Court.

### REQUEST FOR JUDICIAL NOTICE

Scottsdale asks the Court to take judicial notice of four documents. *See* ECF No. 43 ("RJN"). Those documents include:

(1)    The Amended Complaint filed in the underlying lawsuit, *Loo v. Hamerslag*, No. 22-2-04800-0 SEA (Wash. Super. Ct. King Cnty. Apr. 3, 2023). *See* RJN Ex. 1.

(2)    Perspectium's Certificate of Amendment of Articles of Incorporation. *See* RJN Ex. 2.

(3)    The Notice of Removal filed in the underlying lawsuit, *Loo v. Hamerslag*, No. 2:22-cv-00493-TSZ (W.D. Wash. Apr. 13, 2022). *See* RJN Ex. 3.

(4)    An email attached to the Notice of Removal filed in the underlying lawsuit, *Loo v. Hamerslag*, No. 2:22-cv-00493-TSZ (W.D. Wash. Apr. 13, 2022). *See* RJN Ex. 4.

Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Accordingly, '[a] court may take judicial notice of matters of public records . . . .'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (first alteration in original) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.*

The Parties quarrel over the fourth and final document, an email attached to the Notice of Removal in the underlying lawsuit. ECF No. 49-1 ("RJN Obj."). The email was sent on April 7, 2022, from the Loo Plaintiffs' counsel to Andersen's counsel in response

to an inquiry seeking the identity of the trustee of the Loo Family Trust.  RJN Ex. 4.  In the correspondence, the Loo Plaintiffs' counsel stated that "the trustees are David and Sarah Loo, citizens of Texas."  *Id.*  For context, this information was requested by Andersen's counsel for purposes of determining whether the case was properly removable from state court to federal court on the basis of diversity jurisdiction.  *Id.*

Hamerslag objects to the email on the ground that it is not the proper subject of judicial notice.  RJN Obj. at 2.  Specifically, Hamerslag believes Scottsdale is attempting to rely on the email "to prove that the Loo Family Trust qualifies as an insured under the Policy and/or to prove that the Loo Family Trust filed the Underlying Lawsuit at the direction of David and/or Sarah Loo."  RJN Obj. at 2.  But in Hamerslag's view, the email is hearsay and lacks authentication, so it may not be judicially noticed.  *Id.* (citing *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1063 n.13 (8th Cir. 2014)).  For its part, Scottsdale disclaims any intent to rely on the email for the purpose of proving the truth of the underlying factual contentions; rather, Scottsdale argues that it seeks to rely on the email for the sole purpose of demonstrating that Scottsdale had notice—prior to denying Hamerslag insurance coverage under the Policy—of the Loo Plaintiffs' representation in a publicly filed court document who the Loo Family Trust trustees were.  *See* ECF No. 53 at 2–3.

The Court **GRANTS** Scottsdale's RJN, as "court filings and orders from other proceedings are proper subjects of judicial notice."  *Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199, 1208 (N.D. Cal. 2022).  The Amended Complaint in the underlying lawsuit, as well as the Notice of Removal and email attached thereto are all public documents in a judicial proceeding, so taking judicial notice of their existence is appropriate.  And taking judicial notice of Perspectium's Certificate of Amendment of Articles of Incorporation is also appropriate given that the Certificate is publicly available

/ / /

/ / /

/ / /

on the California Secretary of State Website.[4]  *See GCIU-Emp. Ret. Fund v. Shelton-Turnbull Printers, Inc.*, No. 2:22-CV-02381-MCS-KS, 2022 WL 18231685, at *1 n.1 (C.D. Cal. Oct. 3, 2022).

In so doing, the Court should take "notice only of the authenticity and existence of" the documents.  *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878 (N.D. Cal. 2013).  Conversely, the Court should not take "notice of any of these documents to establish the truth of the underlying factual contention or the accuracy of the legal conclusions set forth therein."  *Pac. Marine Ctr., Inc. v. Phila. Indem. Ins. Co.*, No. 113CV00992DADSKO, 2016 WL 8730668, at *4 (E.D. Cal. Mar. 18, 2016).  Because Scottsdale only intends to rely upon the disputed email to demonstrate notice of the email's existence in a court filing (the Notice of Removal), judicial notice is appropriate.

## LEGAL STANDARDS

### I.    Motion for Judgment on the Pleadings

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Courts must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party."  *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  Beyond the face of the pleadings, courts "may take judicial notice of matters in the public record without converting the motion into one for summary judgment."  *Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2017 WL 6389775, at *3 (S.D. Cal. Dec. 14, 2017) (citing *Lee*, 250 F.3d at 688–89).

---

[4] *See Business Search*, Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/serach/business (search in search bar for "Perspectium") (last visited June 17, 2025).

"Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).   However, unlike a Rule 12(b)(6) motion, which "may be brought *only* by the party against whom the claim for relief is made," a Rule 12(c) motion may be brought by the party affirmatively seeking relief.  *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F. Supp. 2d 898, 902–03 (S.D. Cal. 2004) (emphasis in original) (citing *In re Villegas*, 132 B.R. 742, 744–45 (B.A.P. 9th Cir. 1991)).  Where, as here, a plaintiff moves for judgment under Rule 12(c), the plaintiff "is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery."  *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989), *cert. denied*, 493 U.S. 1079 (1990).

## II.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Summary judgment is appropriate where the court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When the court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute

11

regarding a material fact.  *Id.*  Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial.  *Celotex*, 477 U.S. at 324.  This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248.  The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings."  *Anderson*, 477 U.S. at 256.

## ANALYSIS

The overarching question teed up by both Scottsdale's Motion for Judgment on the Pleadings and Hamerslag's Motion for Summary Judgment is whether Scottsdale owed a duty to defend and indemnify Hamerslag in the underlying lawsuit.  There is no dispute in the Parties' moving papers that Hamerslag was covered as an insured under the Policy. The dispute, instead, revolves around whether: (1) the Insured vs. Insured Exclusion removes coverage, and if so, (2) the Dilution Claims Exception thereafter restores coverage.  Before exploring those two issues, the Court first sets the stage with the ground rules governing interpretation of insurance policies under California law.[5]

## I.    Background Principles of Insurance Policy Interpretation

In California, "[t]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy."  *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993) (en

---

[5] Where, as here, both Parties agree that California law applies to a declaratory judgment action seeking a declaration that an insurer has no duty to defend, California choice-of-law rules permit California federal courts sitting in diversity to apply California law with little analysis.  *See ABM Indus., Inc. v. Zurich Am. Ins. Co.*, No. C 05-3480 SBA, 2006 WL 2595944, at *10–11 (N.D. Cal. Sept. 11, 2006).

banc).  The duty to defend "extends beyond claims that are actually covered" to include those that are only *potentially* covered.  *Buss v. Superior Ct.*, 939 P.2d 766, 773 (Cal. 1997).  The determination must be made "from the facts and inferences known to an insurer from the pleadings, available information and its own investigations at the time of the tender of defense." *CNA Casualty of Cal. v. Seaboard Surety Co.*, 222 Cal. Rptr. 276, 282 (Ct. App. 1986).  Only when "the extrinsic facts eliminate the potential for coverage [may the insurer] decline to defend even when the bare allegations in the complaint suggest potential liability." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 628 (Cal. 1995).

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] . . . exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003) (alterations in original) (internal quotation marks omitted) (quoting *White v. W. Title Ins. Co.*, 710 P.2d 309 (Cal. 1985) (en banc)).  Exceptions to exclusions are treated much the same as coverage provisions, in that "exception[s] will be construed broadly in favor of the insured." *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1218 (Cal. 1998).  "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *MacKinnon*, 73 P.3d at 1213.  "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. Corp. v. Superior Ct.*, 861 P.2d 1153, 1160 (Cal. 1993) (en banc).

The duty of defense "arise[es] on tender of defense and last[s] until the underlying lawsuit is concluded, or until it has been shown that there is *no* potential for coverage . . . ." *Montrose*, 861 P.2d at 1157 (internal citation omitted).  The total absence of coverage must be conclusive; "[f]acts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility . . . of coverage, therefore add no weight to the scales." *Id.* at 1161.  Where there is a "doubt as to whether the facts give rise to a duty to defend," that doubt "is resolved in the insured's favor." *Horace Mann*, 846 P.2d at 796 (citing *CAN Casualty of Cal.*, 222 Cal. Rptr. at 280).

Because ordinary contract interpretation rules apply to insurance policies, courts interpret policies so as to credit "the mutual intention of the parties at the time the contract is formed . . . ." *AIU Ins. Co. v. Superior Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (en banc). Thus, courts interpret insurance policies by giving the provisions their "clear and explicit meaning . . . unless used by the parties in a technical sense or a special meaning is given to them by usage." *24th and Hoffman Investors, LLC v. Northfield Ins. Co.*, 298 Cal. Rptr. 3d 816, 822 (Ct. App. 2022) (internal citation and quotation marks omitted). When a provision is ambiguous, courts "generally resolve ambiguities in favor of coverage." *AIU Ins. Co.*, 799 P.2d at 1264.

## II.   Insured vs. Insured Exclusion

Against this interpretive backdrop, the Parties disagree as to whether the Insured vs. Insured Exclusion removes the underlying lawsuit from the coverage Scottsdale conferred on Hamerslag under the Policy. As the insured, Hamerslag avers that the Policy does indeed provide coverage. And as the insurer, Scottsdale contends that the Policy does not. Although the Parties' briefs quibble over identical legal issues, their dueling Motions are analyzed under different legal standards. Thus, the Court must carefully consider whether the Parties have satisfied the relevant standard applicable to each respective Motion. *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (concluding that, in reviewing cross-motions for summary judgment, courts must consider each cross-motion separately). The Court begins with Scottsdale's Motion for Judgment on the Pleadings.

### A.   *Scottsdale's Motion for Judgment on the Pleadings*

Scottsdale's position on the Insured vs. Insured Exclusion distills down into one narrow question: whether the presence of the Loo Family Trust as a plaintiff in the underlying lawsuit operates to remove coverage under the Policy. To recap, three plaintiffs filed the underlying lawsuit against Hamerslag—David Loo, Sarah Loo, and the Loo Family Trust. Scottsdale argues that all three plaintiffs, including the Loo Family Trust, fall within the scope of the Insured vs. Insured Exclusion and, for that reason, the lawsuit

14

as a whole falls outside the scope of coverage.  Hamerslag does not dispute that David Loo and Sarah Loo fall within the scope of the Exclusion.  Instead, he argues that Scottsdale has not met its burden at this stage of demonstrating the status of the Loo Family Trust.

Analyzed through the lens of a judgment on the pleadings, Hamerslag is correct.  As a brief synopsis, the Insured vs. Insured Exclusion removes from coverage any claim "brought or maintained by, on behalf of, in the right of, or at the direction of any Insured in any capacity . . . ."  Policy at 26–27 (bold omitted).  An Insured is, as defined by the Policy, Directors and Officers of Perspectium as well as their spouses.  *Id.* at 13, 25.  In Scottsdale's view, David and Sarah Loo satisfy the definition of "Insured" under the Policy, and the inescapable reality is that the Loo Family Trust was joined as a plaintiff in the underlying lawsuit "at the direction of" the Loos.  Thus, according to Scottsdale, the Insured vs. Insured Exclusion is satisfied for all three underlying plaintiffs.

Scottsdale arrives at this conclusion using just two pieces of information.  First, Scottsdale relies on the allegation in the underlying lawsuit stating that "Plaintiff The Loo Family Trust is a Texas trust."  RJN at 10 (paragraph 25 of the underlying amended complaint).  Because the underlying complaint is silent as to any other allegations unique to the Loo Family Trust, Scottsdale reasons that no other conclusion can be drawn besides the one that the trust was joined at the direction of David and Sarah Loo.  MJP Mem. at 9–10.  Other than that lone allegation, Scottsdale also relies on an email sent from the Loos' attorney in the underlying lawsuit, Jack Lovejoy, stating that "the trustees [of the Loo Family Trust] are David and Sarah Loo, citizens of Texas."  RJN at 107.  That email was attached to the Notice of Removal, publicly filed in the underlying lawsuit on April 13, 2022.  *Id.* at 80.  Scottsdale claims that the email and its inclusion in the Notice of Removal served as the basis for its determination that the Insured vs. Insured Exclusion applied when it denied Hamerslag coverage on June 13, 2022.  MJP Mem. at 7.

As probable as Scottsdale's contention may be that the Loo Family Trust joined the underlying suit "at the direction of" David and Sarah Loo, Scottsdale's argument runs headlong into a towering burden to be overcome.  Under California law, for an insurer to

escape the duty to defend, it must "present[] *undisputed* facts which *conclusively* eliminate a potential for liability." *Montrose*, 24 Cal. Rptr. 2d at 473–74 (emphasis added).  As applied here, that standard translates into a requirement for Scottsdale to demonstrate that the set of undisputed facts allow for just a single conclusion: that the Loo Family Trust filed suit at the direction of David and Sarah Loo.  The essential facts that the Court may consider on a judgment on the pleadings motion, however, remain disputed.

Those essential facts rest in the pleadings.  Scottsdale's instant Complaint levels several allegations as to the legal status of the Loo Family Trust, but each of those allegations was denied in Hamerslag's Answer.  As the most palpable example, in paragraph 38, Scottsdale alleges that the "Loo Family Trust is a trust created by and for Mr. Loo and Ms. Loo, which brought the Underlying Lawsuit at the direction of Mr. Loo and Ms. Loo, both Insureds under the Policy."  Compl. ¶ 38.  In his Answer, Hamerslag characterizes this allegation as consisting of a legal conclusion not necessitating a response, but to the extent a response is required, the allegations are denied.  ECF No. 26 ("Answer") ¶ 40.  The pleadings, therefore, reveal a factual dispute between the Parties on a material fact, thereby preventing Scottsdale from prevailing on its Motion.  *See Gen. Conf. Corp. of Seventh-Day Adventists*, 887 F.2d at 230 ("[A] plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.").

Scottsdale argues that it was permitted to go beyond the pleadings in this case and rely upon the Lovejoy email and Notice of Removal in the underlying lawsuit to properly infer that the sole trustees of the Loo Family Trust are David and Sarah Loo.  But at most, those facts are merely probative of the trust's status.  True, the Loos' attorney's email— publicly filed in the underlying lawsuit and judicially noticeable here—stating that David and Sarah Loo are the trustees of the Loo Family Trust provides a comfortable basis for one to believe that the trust brought the underlying suit at the direction of David and Sarah Loo.  But Scottsdale's burden on its Motion for Judgment on the Pleadings requires more than showing that the insurer was justified in its good faith belief that it had no duty to defend; it requires "the insurer negat[ing] all facts suggesting potential coverage."

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 326 P.3d 253, 258 (Cal. 2014) (quoting *Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005)). Because there exists a dispute of material fact at this point as to who the trustees of the Loo Family Trust are, it would be improper to grant judgment on the pleadings. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)).

In its Reply, Scottsdale proffers a new piece of evidence to support its Motion and faults Hamerslag for not proffering any evidence of his own, but the Court need not explore that evidentiary rabbit hole. For one, Scottsdale highlights an interrogatory response from Hamerslag in the instant suit confirming the true identity of the Loo Family Trust trustees, but to go beyond the pleadings would require treating the Motion as a motion for summary judgment. *See Hal Roach Studios, Inc.*, 896 F.2d at 1550. The Court exercises its discretion to decline that treatment here, particularly because the evidence was presented in a reply brief without opportunity for comment. *See Yakima Valley Memorial Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) (recognizing district court's discretion not to convert a motion for judgment on the pleadings into a summary judgment motion). And second, Hamerslag has no obligation to produce evidence to rebut a motion for judgment on the pleadings. For present purposes, Scottsdale's factual allegations that "have been denied are assumed to be false." *Hal Roach Studios, Inc.*, 896 F.2d at 1550 (citing *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)). Hamerslag's inability to articulate who the true trustees of the Loo Family Trust are other than David and Sarah Loo might be a factual lapse in his theory of the case, but a judgment on the pleadings is an improper vehicle for making that call.

Accordingly, because Scottsdale has not demonstrated that the face of the pleadings, along with the judicially noticeable material, conclusively establishes applicability of the Insured vs. Insured Exclusion, Scottsdale's Motion for Judgment on the Pleadings is **DENIED**.

/ / /

### B.    Hamerslag's Motion for Summary Judgment

Scottsdale's failure to prevail on its Motion for Judgment on the Pleadings is far from a sure-fire omen of success for Hamerslag's Motion for Summary Judgment. Hamerslag argues that "[t]here is no evidentiary foundation for th[e] allegation" that the Loo Family Trust filed the underlying suit at the direction of David and Sarah Loo, but Hamerslag's absolutism goes too far.  MSJ Mem. at 14.  As the Court noted above, at the time Scottsdale denied Hamerslag's tender of insurance on June 13, 2022, the underlying lawsuit had already been removed from state court to federal court, the notice of which included an email from the Loos' attorney stating that David and Sarah Loo were the trustees of the Loo Family Trust.  *See* RJN at 80.  Though the Court concluded above that such an email was insufficient to conclusively establish the identity of the trustees, that email, which was attached to a publicly filed court document, is more than enough to create a triable issue of fact on the question of who the actual trustees are.  Hamerslag has, therefore, failed to meet the applicable burden associated with his own Motion of establishing the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.

Hamerslag objects to the Lovejoy email as inadmissible hearsay, but that objection is without merit.  Although a "trial court can only consider admissible evidence in ruling on a motion for summary judgment," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002), courts focus on the admissibility of the evidence's contents, not the admissibility of the evidence's form, *see Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Where, as here, the contents of the evidence could be converted into admissible evidence through competent live testimony, courts can consider the evidence.  *See TLC Custom Farming Co. v. Stoughton Davidson Acct. Corp.*, No. CV-13-00014-PHX-DJH, 2016 WL 11640210, at *4 n.4 (D. Ariz. Aug. 5, 2016) (citing *Fraser*, 342 F.3d at 1037).  Hamerslag submits no reason why Mr. Lovejoy would be unable to testify as to his personal knowledge of the Loo Family Trust, and the Court can conceive of no reason of its own.  In any event, beyond the Lovejoy email, Scottsdale also points to an interrogatory response from the instant suit in which Scottsdale states that Hamerslag "confirmed that

the Loo Family Trust was a trust for David and Sarah Loo to hold their assets." MSJ Opp'n at 21. As he does in his Reply, Hamerslag may deny the existence of that correspondence, yet the correspondence, if substantiated at trial, would constitute admissible evidence tending to show that the Loo Family Trust trustees are indeed David and Sarah Loo.[6]

In sum, there is a dispute of material fact as to who the trustees of the Loo Family Trust are, thereby precluding summary judgment for Hamerslag as to the question of whether the Insured vs. Insured Exclusion applies. Because the Court cannot resolve Hamerslag's Motion for Summary Judgment on that ground alone, it must proceed to the second ground presented by the Motion because the Dilution Claims Exception may function to restore coverage regardless of the applicability of the Insured vs. Insured Exclusion.

## III.    Dilution Claims Exception

Notwithstanding the Parties' stalemate on the Insured vs. Insured Exclusion issue, the Dilution Claims Exception presents another opportunity for Hamerslag to prevail on his Motion for Summary Judgment. Again, there is no dispute that the underlying lawsuit, as a general matter, fits within the coverage provided by the D&O Coverage Section. Thus, even if the underlying suit satisfies the Insured vs. Insured Exclusion—which the Court refrained from concluding above—the D&O Coverage Section nevertheless restores coverage to Hamerslag in the event the Dilution Claims Exception is satisfied. Hamerslag advances just such an argument in his Motion.

Recall that the Dilution Claims Exception restores coverage for any claim otherwise excluded under the Insured vs. Insured Exclusion if that claim:

> is brought or maintained by any former Director or Officer of the Company *solely in their capacity as a securities holder of the Company* and where such Claim *is solely based upon and arising out of any actual or alleged unfair dilution of such securities holder's securities interest*, but only if such Claim is first made

---

[6] Hamerslag spills no ink in his Reply to argue that this purported correspondence would not fall into the hearsay exclusion for an opposing party statement under Federal Rule of Evidence 801(d)(2)(A).

within two (2) years after the date such Director or Officer ceased to be a Director or Officer of the Company and such Claim is made in connection with the sale of a majority of the assets of the Company, the merger of the Company with or into another entity, or the initial public offering of the securities of the Company.

Policy at 42 (bold omitted) (emphasis added).  The emphasized phrases above highlight the two points of disagreement between the Parties.

Hamerslag repackages the Dilution Claims Exception as consisting of four elements, all of which must be met for the Exception to be satisfied: (1) the underlying suit was brought solely in the plaintiff's capacity as a securities holder of the company; (2) the underlying suit is solely based upon and arising out of alleged unfair dilution; (3) the underlying suit was filed within two years of when the underlying plaintiff ceased to be a Director or Officer of the company; and (4) the underlying suit was brought in connection with the majority sale, merger, or initial public offering of the company.  *See generally* MSJ Mem.  The Court agrees that this four-element test accurately characterizes the Dilution Claims Exception, so the Court adopts it as the proper test to be applied.

The crux of this dispute is whether the Loo Plaintiffs filed the underlying lawsuit "solely" in their capacity as Perspectium securities holders and whether the Loo Complaint is "solely" based upon and arising out of alleged unfair dilution of the Loos' Perspectium shares.  Whereas Hamerslag argues that the gravamen of the Loo Complaint "was the harm caused to the Perspectium shareholders and nothing else," *id.* at 17, Scottsdale counters that the Loo Plaintiffs brought this suit in a dual capacity, not just as Perspectium shareholders but also as BitTitan employees, BitTitan shareholders, and Idera employees, *see generally* MSJ Opp'n.

A searching inventory of the allegations in the Loo Complaint demonstrates that the underlying suit was, as Hamerslag posits, brought solely in the Loos' capacity as Perspectium shareholders and that the underlying suit was based solely upon and arising out of alleged unfair dilution.  The Loo Complaint sets forth one continuous chain of events allegedly resulting in harm to the Loo Plaintiffs, all of which emanated directly from the

20

Loos' stake in Perspectium shares. The entirety of the allegations pertaining to that chain of events was essential for the Loo to fully encapsulate in their complaint how Hamerslag allegedly conceived of a scheme to manufacture the Perspectium-BitTitan merger and sell off the remaining equity to a third-party (here, Idera) in such a way as to pay out the Loos for their Perspectium shares at a significant loss. The mere fact that Hamerslag's alleged scheme persisted beyond the closing of the Perspectium-BitTitan merger, thereby incidentally implicating David Loo's newfound status as a BitTitan equities holder, and later, an Idera employee, does not negate the reality that the underlying suit is all about one thing: how the Loos retained less money from their Perspectium shares than the shares were otherwise worth absent Hamerslag's alleged wrongdoing.

Scottsdale argues that the word "solely" has a clear and unambiguous meaning, citing the Ninth Circuit's recognition that the "ordinary meaning of 'solely' is 'alone; singly' or 'entirely; exclusively,'" *Syed v. M-I, LLC*, 853 F.3d 492, 500 (9th Cir. 2017) (citation modified) (citing *American Heritage Dictionary of the English Language* 1666 (5th ed. 2011)). Because the Loos, in Scottsdale's view, did not file the underlying suit "exclusively" or "entirely" in their capacity as Perspectium shareholders, Scottsdale contends the Loo Complaint does not satisfy the "strict requirement" imposed by the Dilution Claims Exception. MSJ Opp'n at 15.

California courts, however, have not endorsed such a cramped reading of the word "solely." Consider, for instance, the recent case *Lindsay v. Patenaude & Felix APC*, 328 Cal. Rptr. 3d 113 (Ct. App. 2024). There, the court confronted the public interest exception to the state's anti-SLAPP law, which exempts from the anti-SLAPP statute lawsuits "brought solely in the public interest or on behalf of the general public" if certain conditions are met. *Id.* at 117. To determine whether the plaintiff's suit satisfied the public interest exception, the court in *Lindsay* looked to "the nature of the allegations and scope of relief sought in the prayer." *Id.* at 120–21 (quoting *Tourgeman v. Nelson & Kennard*, 166 Cal. Rptr. 3d 729, 741 (Ct. App. 2014)). In reviewing those relevant criteria, the court concluded that the complaint did "not seek an advantage for [the plaintiff] that is 'more

narrow' (or different in any way) than the advantage it seeks for the" public at large, even though the plaintiff sought damages that would serve her own personal interests. *Id.* at 121. *Lindsay*, thus, stands for the proposition that California courts, in analyzing the limits of the word "solely," take a more liberal approach that allows for the inclusion of allegations that bear only incidentally on the core of the complaint.

As applied here, the underlying allegations in the Loo Complaint may incidentally bump up against David Loo's dual status as a BitTitan shareholder, BitTitan employee, or Idera employee, but Loo's dual status arose exclusively because of Hamerslag's alleged wrongdoing that walked Loo straight into that dual status. The Loos allege that, had Hamerslag disclosed his true intentions to David Loo prior to the Perspectium-BitTitan merger, Loo "would not have accepted [BitTitan] options and instead would have insisted on cash or BitTitan shares, or would not have pursued the merger." Loo Compl. ¶ 13. Loo's dual capacities (if any) in the underlying suit, therefore, are merely inextricably intertwined consequences of Hamerslag's alleged actions that resulted in dilution of the Loos' Perspectium shares.[7]

Scottsdale also argues that the underlying causes of action for "Interference with Contractual Relations" and "Interference with Prospective Economic Advantage" exclusively implicate David Loo's capacity as a BitTitan employee because the causes of action only refer to Loo's contractual right to exercise BitTitan securities as part of his employment agreement with BitTitan. But as discussed above, David Loo's role in BitTitan was part and parcel with Hamerslag's alleged scheme to merge Perspectium with BitTitan and then expeditiously seek a post-merger sale. One cannot grasp the full extent

---

[7] The Court does not take Scottsdale to dispute that the underlying allegations in the Loo Complaint consist of unfair dilution claims, described by the Court in a previous Order as an event "when a shareholder in a merging company swaps their shares in the old company for shares in the newly created entity at a less favorable exchange rate than they would have received in the absence of wrongdoing." ECF No. 25 at 6 & n.3 (collecting cases). Scottsdale's only argument, as the Court understands it, is that the underlying allegations do not *solely* consist of unfair dilution claims.

of, or assess the possible damages associated with, the Loos' unfair dilution claims without discussing the steps that followed the merger. And as Hamerslag points out in his Reply, the Dilution Claims Exception expressly contemplates that unfair dilution claims must be made in connection with, among other things, "the merger of the Company with or into another entity." Policy at 42 (bold omitted). It is difficult to comprehend how the Exception could mean much of anything at all if the insurer were able to dodge its coverage obligations based on allegations in the underlying complaint that describe the precise conditions required by the Exception.[8]

In any event, the Court's conclusion above is bolstered by one of the cardinal rules of insurance disputes: that "exception[s] will be construed broadly in favor of the insured[,] . . . thereby ensuring that the end result (coverage or noncoverage) conforms to the insured's objectively reasonable expectations." *Aydin Corp.*, 959 P.2d at 1218. Accordingly, for the reasons previously stated, the Court **GRANTS** Hamerslag's Motion for Summary Judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[8] As Hamerslag also notes in his Reply, the "Interference with Contractual Relations" and "Interference with Prospective Economic Advantage" causes of action are limited to David Loo alone. Thus, even if the Court were to agree with Scottsdale that those two causes of action fall outside the Dilution Claims Exception, the balance of the causes of action would still fall within the Exception. Because "under California law, all insurance policies incorporate principles of allocation, whether or not the policy contains an explicit allocation clause," summary judgment in Hamerslag's favor would still be appropriate as to the causes of action for "Breach of Fiduciary Duty," "Aiding and Abetting," and "Negligent Misrepresentation." *See Chartrand v. Ill. Union Ins. Co.*, No. C 08-05805 JSW, 2009 WL 2776484, at *4 (N.D. Cal. Aug. 28, 2009) (citing *Buss*, 939 P.2d at 776)

## CONCLUSION

In light of the foregoing, the Court **DENIES** Scottsdale's Motion for Judgment on the Pleadings (ECF No. 40) and **GRANTS** Hamerslag's Motion for Summary Judgment (ECF No. 45).  The Court **ENTERS** judgment in favor of Hamerslag declaring that Plaintiff Scottsdale Insurance Company had a duty to defend and duty to indemnify Defendant Steven Hamerslag in the underlying lawsuit.

**IT IS SO ORDERED.**

Dated:  June 23, 2025

Hon. Janis L. Sammartino
United States District Judge